# United States Court of Appeals for the Fifth Circuit

United States Courts
Southern District of Texas
FILED

*March 04, 2026*

Nathan Ochsner, Clerk of Court

No. 25-20153

United States Court of Appeals
Fifth Circuit

**FILED**
February 11, 2026

Lyle W. Cayce
Clerk

MARANDA OLIVER,

*Plaintiff—Appellant,*

*versus*

JACK HENRY & ASSOCIATES, INCORPORATED,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-1309

Before JONES, DUNCAN, and DOUGLAS, *Circuit Judges.*

PER CURIAM:[*]

Maranda Oliver sued her former employer, Jack Henry & Associates, Inc. (JHA), under the Americans with Disabilities Act (ADA) for alleged failure to accommodate and disability discrimination. We AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

I

Oliver has been repeatedly diagnosed with dyslexia. In 2019, she began working for JHA, a financial technology company, as a technical support representative (TSR).

By Oliver's admission, she began to struggle with work by 2020. She claims her difficulties were the result of staff downsizing and COVID remote work requirements. In September 2020, Oliver received a warning from Tammy Story, her supervisor, pointing to several instances in which Oliver had acted unprofessionally, failed to follow up with customers, or failed to follow company instructions.

In March 2021, during two virtual conference calls with Story in which Story attempted to coach Oliver, Oliver reportedly raised her voice and acted aggressively. In the second call, Oliver reportedly screamed at Story. Oliver admits she "became emotional" during this incident but claims it was because she was under tremendous stress. As a result of this incident, JHA's Human Resources department (HR) contacted Oliver on March 31 to inform her that her employment would be terminated. During this call, Oliver informed JHA that she was facing intense stress due to medical issues, housing instability, and other personal problems. After hearing about these struggles, JHA decided to issue Oliver a final warning in lieu of termination and grant her time off from work. JHA initially issued the final warning to Oliver around April 9. A revised version of the warning, signed by both parties on April 20, stated that JHA "expect[ed] significant and immediate improvement" in Oliver's conduct.[1]

---

[1] Oliver states that she "received" her final warning on April 20. In her Reply Brief, however, she acknowledges that the document she received on April 20 was a revised version of the final warning that JHA issued after discussing the revisions with Oliver.

Shortly after Oliver returned to work in April, her doctor sent a note to JHA requesting accommodations for Oliver's dyslexia, which JHA's HR department received. Specifically, the note requested that Oliver not be given more than one task every 30 minutes.

On April 13, Story sent an email to Oliver warning her for having improperly handled two customers' personally identifiable information. JHA apparently did not determine that this incident warranted official disciplinary action.

On April 14, Oliver filled out and submitted a JHA disability accommodation form requesting fewer cases and "more time to work."

On April 19, Oliver again revealed personally identifiable information in an email. Once again, JHA issued her a warning. At this point, Story claims that she again considered firing Oliver, but HR advised her to wait for Oliver's accommodation paperwork.

On April 21, Oliver's doctor submitted a second note on her behalf, stating that "restriction[s] in [number] of prompts and increased time" would allow Oliver to compensate for her dyslexia. The note again requested that Oliver be given no more than one new task every 30 minutes. HR contacted Story two days later asking if it would be possible to grant accommodations, but Story responded that the requested accommodation would not be possible. Giving an employee 30 minutes per task would result in some cases taking up to six hours to complete, which would have been unacceptably slow. HR then informed Oliver that it was denying her doctor's requested accommodations. During this call, HR also discussed transferring Oliver to a different department (despite JHA's rule requiring two years of work before allowing transfers).

Next, Oliver claims she made yet another request for accommodations, this time asserting that she simply required fewer cases on

an "as needed" basis. She claims that HR "blew [her] off" and did not consider this request. Later, JHA would claim it did not consider any accommodations not recommended by Oliver's physicians.

On April 26, Story conducted a formal evaluation of Oliver's work. She concluded Oliver was "[o]verall doing a good job" and "progressing towards meeting targets this year." Oliver also received a "strong" rating in the areas of timeliness of responses to clients and "fair share of casework."

On April 27, HR informed Oliver that her accommodation request had been considered and that there were several positions that Oliver "would be eligible for" at JHA that were "open right now." HR promised to follow up with Oliver on internal job leads but also warned that if the company could not find her work elsewhere in the company, her employment would have to be terminated.

On April 28, JHA claims that Oliver advised HR she was already being accommodated but needed more time to obtain revised accommodation paperwork. JHA also claims that Oliver said she had only requested an accommodation in an attempt to save her job, but Oliver denies this conversation ever occurred.

On April 29, after Oliver had begun applying for other positions at JHA, JHA placed her on administrative leave, citing her inappropriate behavior in March and her revealing personally identifiable information in April. Leave was to last "pending receipt of [Oliver's] updated accommodation paperwork." HR indicated that Oliver could continue her scheduled interviews for other positions. At this point, Oliver claims that HR promised her she could have the two-year employment requirement waived. Emails and transcripts in the record, however, do not evidence any such promise.

On April 30, Oliver asked HR about the possibility of waiving the two-year waiting requirement to allow her to transfer to a specific position. HR replied by telling Oliver not to schedule any new interviews "[b]ecause you are on leave pending documentation from your doctor." HR also noted that "if your current department can accommodate you, you may no longer need to apply for other positions."

Between May 10 and June 1, Oliver submitted three additional accommodations requests from three different physicians. The first request noted that Oliver "requires additional time to complete tasks" but stated that "[i]f further details are needed" about her specific needs, such details would need to "come from a Dyslexia specialist." The second request stated that Oliver "qualif[ied]" for accommodations including reduced workload but asserted that "it is usually best practice to leave the particular details of these accommodations to be discussed between the employee and employer." The final request posited that Oliver should be "retained at work" and "provided reasonable accommodations" but also stated "we are unable to definitively provide specific timetables for task completion while at work." JHA did not respond to these final three requests for accommodation.

On June 2, Oliver's employment with JHA was terminated. On its personnel action form, JHA noted that Oliver was terminated for "Performance/Conduct."

In April 2022, Oliver sued JHA for alleged violations of the ADA. In March 2024, JHA filed a motion for summary judgment, which the district court granted. Oliver now appeals.

II

We review summary judgments *de novo*. *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). Facts and inferences are viewed in the light most favorable to the nonmovant. *Reid v. State Farm Mut. Auto. Ins. Co.*, 784

F.2d 577, 578 (5th Cir. 1986). This court "may affirm a summary judgment on any ground supported by the record." *Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*, 75 F.4th 522, 528 (5th Cir. 2023) (internal quotations omitted).

## III

The ADA requires employers to make "reasonable accommodations" for known physical or mental limitations of otherwise-qualified employees. 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure-to-accommodate claim using only circumstantial evidence, a plaintiff must show (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by her employer; and (3) her employer failed to make reasonable accommodations for such known limitations. *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). An employee's proposed accommodation is not "reasonable" if it would require the elimination of one or more essential functions of her job. *Jasany v. U.S. Postal Serv.*, 755 F.2d 1244, 1250 (6th Cir. 1985).

Oliver argues that the district court erred in granting summary judgment dismissing her failure-to-accommodate claim. We disagree.

As the district court properly concluded, none of Oliver's accommodation requests was reasonable. Her initial request—that she be given no more than one task every 30 minutes—was unreasonable. HR specifically discussed this possibility with Story and concluded that this accommodation was impossible. Moreover, as the district court noted, Oliver concedes that such an accommodation would result in a greater workload for her coworkers. An accommodation is not "reasonable" if it burdens other employees. *Hammond v. Jacobs Field Servs.*, 499 F. App'x 377, 382 (5th Cir. 2012); *see also Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997) ("We cannot say that [appellant] can perform the essential

functions of the job with reasonable accommodation, if the only successful accommodation is for [appellant] not to perform those essential functions."). Thus, Oliver's initial accommodation request was not reasonable.

Oliver makes much of the fact that although JHA assessed the plausibility of her 30-minutes-per-task request, it never specifically addressed Oliver's requests for "reduced workload" and "additional time to complete tasks." But even if we assume that these two requests were *separate* from her 30-minutes-per-task request, Oliver still must demonstrate they were reasonable, regardless of whether JHA considered them in good faith. *See Silva v. City of Hidalgo*, 575 F. App'x 419, 424 (5th Cir. 2014) ("[E]ven if a genuine issue of material fact exists as to whether the [defendant] participated in the interactive process in good faith, its dereliction cannot be said to have *led* to a failure to reasonably accommodate [plaintiff] because there is no evidence that a reasonable accommodation was feasible."). Oliver does not dispute that she, like other JHA employees, was offered "time out of the queue" to catch up on work. Since any *further* reduction in Oliver's workload would have resulted in a larger workload for her peers, she cannot show these requests were "reasonable" under the ADA. *See Hammond*, 499 F. App'x at 382.

Finally, Oliver argues that JHA could have reasonably accommodated her by transferring her to another position. To prevail on this argument, Oliver must show she was "otherwise qualified to meet the hiring criteria for any theoretical position to which she could be reassigned." *Leger v. Tex. EMS Corp.*, 18 F. Supp. 2d 690, 695 (S.D. Tex. 1998). This she cannot do. It is undisputed that JHA had a general policy of disallowing employees from transferring positions until they had worked for at least two years. Thus, she was not eligible for transfer.

It is true that HR could waive the two-year waiting requirement, allowing Oliver to transfer. Oliver claims HR "promised" her that this would be possible. But even if this claim is accurate, it does not change the fact that Oliver was not qualified for the positions to which she wanted to transfer. JHA was not required to make an exception or waiver to its job requirements just to accommodate her disability. *See Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("We do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring disabled persons be given priority in hiring or reassignment over those who are not disabled." (citation modified)).

Moreover, JHA had numerous valid reasons for denying Oliver a waiver. Oliver had received documented performance warnings at the time she sought a transfer. Additionally, HR wanted to review the revised accommodation paperwork Oliver was seeking from her doctor before approving a transfer. JHA claims this was needed to determine whether Oliver was qualified for the other positions she sought. JHA, however, never received any specific accommodation proposals from Oliver after denying her waiver request. All three of Oliver's subsequent requests for accommodation were vague and nonspecific. Hence, JHA had valid reasons for denying a transfer.

Because Oliver did not articulate a specific limitation caused by her disability, and because none of her accommodation requests were reasonable, the district court correctly ruled that her failure-to-accommodate claim could not survive summary judgment.

## IV

The ADA also prohibits employers from discriminating on the basis of disability. 42 U.S.C. § 12112(a). To prevail on a disability discrimination claim, a plaintiff must establish a *prima facie* case of discrimination. *EEOC v.*

*LHC Grp.*, 773 F.3d 688, 694 (5th Cir. 2014). To establish a *prima facie* case, the plaintiff must prove (1) she has a disability; (2) she was qualified for the position at issue; and (3) she was subjected to an adverse employment decision on account of her disability. *Id.* at 695.

If the plaintiff establishes a *prima facie* case, the defendant must "articulate a legitimate, nondiscriminatory reason for the underlying employment action." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004) (citation omitted). This is a burden of production, not of persuasion. *See Outley v. Luke & Assocs.*, 840 F.3d 212, 216 (5th Cir. 2016). If the defendant satisfies this burden, the plaintiff must prove the employer's articulated reasons are pretextual. *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016). One way a plaintiff may demonstrate pretext is by showing "disparate treatment," *i.e.* that her employer treated her more harshly than another employee for "nearly identical" actions. *Okoye v. Univ. of Tex. Hou. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). Another way is showing that "the employer's proffered explanation is false or unworthy of credence." *Delaval*, 824 F.3d at 480 (internal quotations omitted).

Oliver argues the district court erred in granting summary judgment against her disability discrimination claim. We assume, without deciding, that Oliver has demonstrated a *prima facie* case of discrimination. Oliver's argument nonetheless fails for three reasons.

First, JHA has met its burden of production to articulate a legitimate, nondiscriminatory reason for ending Oliver's employment. JHA's claim that it terminated Oliver for performance and conduct is plausible given the well-documented instances of her misbehavior. Her behavior in the March 30 meeting alone is sufficient. *Potseluyko v. People's Tr. Fed. Credit Union*, No. 4:18-CV-4010, 2020 WL 488904, at *4 (S.D. Tex. Jan. 30, 2020)

("Defendant has provided a nondiscriminatory reason for Plaintiff's termination—his rudeness and insubordination during [a] meeting."). Indeed, Oliver does not even appear to dispute the fact that JHA has met its burden.

Second, Oliver cannot demonstrate pretext by showing disparate treatment, because she fails to show that JHA treated her more harshly than similarly situated employees under "nearly identical" circumstances. *See Okoye*, 245 F.3d at 514. True, Story testified she had never recommended termination of any TSR other than Oliver. But Story also testified that no employee besides Oliver had been rude and insubordinate in response to coaching. Instead of offering an example of a "nearly identical" employee who was not fired for similar conduct, Oliver states that the *reason* she cannot do so is because of Story's poor recordkeeping. But this does not change the fact that Oliver cannot point to an example. Consequently, her disparate treatment claim fails. *See ibid.*

Third, Oliver also fails to demonstrate pretext by showing that JHA's explanation for her termination is "false or unworthy of credence." *Delaval*, 824 F.3d at 480 (internal quotations omitted). As the district court noted, Oliver had a well-documented history of performance-related issues. Nothing in the record demonstrates that Oliver's proffered reason for termination is pretextual.

Oliver argues that JHA's proffered reason for firing her must be pretextual because there had been no "new disciplinary actions" against her after she received her final warning in lieu of termination. Yet it is undisputed that JHA made the decision to issue Oliver a final warning on March 31 and sent her the initial version of the warning in early April. Oliver received *subsequent* warnings on April 13 and 19 for revealing personally identifiable

information.[2] Thus, Oliver cannot claim that she did not violate company policies after JHA issued her a final warning. And the fact that JHA ultimately waited until June to make a final decision about Oliver's employment does not call its proffered reason into doubt.

In sum, nothing in the record demonstrates that JHA fired Oliver for any reason other than her conduct in March and April. Because JHA has met its burden of production and Oliver has failed to demonstrate pretext, the district court properly granted summary judgment against her disability discrimination claim.

## V

The district court's judgment is AFFIRMED.

---

[2] Oliver argues that the warning she received on April 13 was for conduct that occurred a month earlier, in March. JHA disputes this, arguing that the conduct in question occurred in early April. This dispute, however, is immaterial, because Oliver *also* received a warning on April 19 for revealing personally identifiable information that same day. Thus, Oliver unquestionably violated company policies *after* the decision to issue her a final warning in lieu of termination.